UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.

THOMAS DAVANZO, and
ROBERT FEDYNA

CASE NO. 2:15-cr- 141 FTM 99 MRM

18 U.S.C. § 1349
18 U.S.C. § 1956(h)

INDICTMENT

SEALED

The Grand Jury charges:

COUNT ONE
(Conspiracy to Commit Wire Fraud)

Introduction

At times material to this Indictment:

A.    Background

1.    The Energy Independence and Security Act of 2007 (the Act) required the U.S. Environmental Protection Agency (EPA) to encourage the production and use of renewable fuel in the United States. Specifically, the Act directed the EPA to write regulations to ensure an increase in the amount of such renewable fuel through a mandate that applied to petroleum refiners and importers.

2.    From May 2007 through the date of the Indictment, petroleum refiners and importers in the U.S. were required by federal law to have renewable fuel in their product mixes. Petroleum refiners and importers, known as "obligated parties," could

meet this obligation by purchasing credits from renewable fuel producers. These credits were called "renewable identification numbers" or "RINs."

3.      Renewable fuel producers could generate RINs by producing qualifying renewable fuels in compliance with EPA regulations. Depending on the type of renewable fuel produced, each gallon of renewable fuel was assigned a predetermined number of RINs pursuant to EPA regulations. For the type of renewable fuel at issue in this Indictment, the equivalence value was typically 1.7 RINs generated for each gallon of renewable fuel produced.

4.      From July 1, 2010, through the date of the Indictment, RINs have been generated, recorded, and stored electronically through the EPA Moderated Transaction System (EMTS).

5.      Feedstock was the basic material used in the production of any renewable fuel. Typical feedstocks used in renewable fuel production included soybean oil, yellow grease, and used cooking oil.

6.      Renewable fuel producers could sell the RINs to obligated parties or to brokers that would then sell the RINs to obligated parties. In certain circumstances, a renewable fuel producer could sell RINs separately from the volume of renewable fuel to which they had been assigned, meaning the RINs could be bought and sold without buying and selling the associated renewable fuel. From then on, however, the RIN-stripped renewable fuel could never be used to generate more RINs.

7.      It was illegal to generate RINs for a volume of renewable fuel that was not actually produced in compliance with EPA regulations. In particular, it was illegal to

2

generate RINs unless the RINs were based on renewable fuel and the production process used to make that fuel met specific criteria. Moreover, it was illegal to generate RINs more than once for any given volume of renewable fuel.

8.     Any RINs produced in violation of the rules described above are invalid. Any obligated parties that purchased such invalid RINs would be required to purchase replacement RINs in order to demonstrate compliance with their annual obligation.

B.   Individuals

9.     Thomas Davanzo is a resident of Estero, Florida, among other locations. Together with others, Davanzo created, caused to be created and controlled shell companies, including, but not limited to, Southwestern Renewable Biofuels, LLC, Advanced Energy Group, Inc., and New England Renewable Corporation. Through these shell companies and other entities, Davanzo and others pretended to buy renewable fuel from conspirators in the scheme and pretended to sell feedstock to those same conspirators. Davanzo created, caused to be created and controlled bank accounts in the names of these shell companies and in his own name in order to launder and conceal the proceeds of the fraud scheme and to enrich himself and others.

10.     Robert Fedyna is a resident of Naples, Florida, among other locations. Together with others, Fedyna created, caused to be created and controlled shell companies, including, but not limited to, Southwestern Renewable Biofuels, LLC, and Columbia Industrial Group. Through these shell companies and other entities, Fedyna and others pretended to buy renewable fuel from conspirators in the scheme and pretended to sell feedstock to those same conspirators. Fedyna created, caused to be

created and controlled bank accounts in the name of these shell companies and in his own name in order to launder and conceal the proceeds of the fraud scheme and to enrich himself and others.

### C.    Entities

11.    Gen-X Energy Group, Inc. (Gen-X) was a renewable fuel producer headquartered in Pasco, Washington. It operated a facility located in Moses Lake, Washington and another facility in East Dublin, Georgia through its subsidiary Southern Resources & Commodities, LLC (SRC). Gen-X and SRC were registered with the EPA as authorized producers of renewable fuel, which allowed both entities to generate and sell RINs on renewable fuels they produced using an EPA-approved process. In fact, Gen-X and SRC did not follow such a process and did not produce a legitimate product. Instead, Gen-X and SRC claimed the production of RINs on gallons of fuel that they did not produce and sold those illegal RINs to a third-party broker to generate millions of dollars in proceeds, which Gen-X, SRC and others used to perpetuate the scheme and for other purposes.

12.    Advanced Energy Group, Inc., (Advanced Energy) was a Florida corporation created by Davanzo, who was its President and the signatory on at least one of its bank accounts. Advanced Energy was a shell company that paid millions of dollars to SRC, but, in reality, did not engage in any legitimate business with SRC. Advanced Energy was funded by other shell companies involved in the fraud scheme, including CIG (discussed below). Advanced Energy was dissolved on or about September 16, 2014.

4

13.     New England Renewable Corporation (New England Renewable) was a New Jersey corporation created by Davanzo, who was its President and Registered Agent.  Davanzo was the signatory on at least two known bank accounts belonging to New England Renewable.  Davanzo held New England Renewable out to be a legitimate recycling business in the mining, quarries, oil, and gas industries.  The company was really an empty shell with no discernible business expenses or business location.  New England Renewable served as a source of funds for, among others, Fedyna.

14.     Southwestern Renewable Biofuels, LLC (Southwestern Renewable) was a Florida limited liability company created by Davanzo, who was its Managing Member and Registered Agent, and Fedyna, who was its Manager.  Davanzo and Fedyna were the signatories on at least two known bank accounts belonging to Southwestern Renewable.  Davanzo and Fedyna funded Southwestern Renewable with fraud proceeds from the bank accounts of other shell companies that·they controlled.  The company's headquarters were at the same Estero, Florida address as that of Advanced Energy.  Southwestern Renewable served as the registered agent for Advanced Energy Group and Columbia Industrial Group (discussed below).

15.     Columbia Industrial Group, Inc. (CIG) was a Florida corporation created by Fedyna, who was its President and the signatory on at least one of its known bank accounts.  The company claimed, in its incorporation documents, to be a "Grease Broker."  CIG's business address at the time of incorporation was in Estero, Florida, at the same address as that of Advanced Energy and Southwestern Renewable.  On

5

paper, CIG was funded by wire transfers from SRC.  In reality, CIG was a sham entity

that funded other accounts controlled by Davanzo and Fedyna, including the Advanced

Energy account, and served as a slush fund for Fedyna and Davanzo's personal

enrichment.  The company was administratively dissolved on or about September 26,

2014.

## The Conspiracy

16.     Beginning on an unknown date, but at least as early as in or about March

2013, and continuing thereafter, through and including at least May 2014, in the Middle

District of Florida and elsewhere,

### THOMAS DAVANZO
### and
### ROBERT FEDYNA,

the defendants herein, knowingly and willfully did combine, conspire, confederate and

agree, with one another and with others, both known and unknown to the Grand Jury, to

commit certain offenses against the United States, specifically, to devise and intend to

devise a scheme and artifice to defraud and for obtaining money and property by means

of materially false and fraudulent pretenses, representations, and promises, utilizing

transmissions by means of wire and radio communication in interstate and foreign

commerce of any writings, signs, signals, and sounds, in violation of Title 18, United

States Code, Section 1343.

6

## Manner and Means of the Conspiracy

17.     It was a part of the conspiracy that the conspirators would and did purport to process feedstock into renewable fuel, including a product called "GForce-RDT," in order to generate sales of fraudulent RINs to a broker.

18.     It was further a part of the conspiracy that the conspirators would and did claim to process feedstock and produce renewable fuel when they did not, for the purpose of fraudulently generating RINs.

19.     It was further a part of the conspiracy that the conspirators, through various entities, would and did purport to buy the material "produced" at Gen-X and SRC, and sell "feedstock" to Gen-X and SRC, for the purpose of creating the appearance of legitimate business activities.

20.     It was further a part of the conspiracy that the conspirators, through various entities, would and did re-process the same material multiple times through the Gen-X and SRC facilities, for the purpose of fraudulently generating RINs.

21.     It was further a part of the conspiracy that the conspirators would and did electronically generate RINs through the EMTS system for purported production of their renewable fuel product.

22.     It was further a part of the conspiracy that the conspirators would and did separate the RINs purportedly generated from the production of their renewable fuel product from the fuel itself.

23.     It was further a part of the conspiracy that the conspirators would and did cause a third party broker to wire money to Gen-X and SRC for the purchase of RINs generated by fraud.

24.     It was further a part of the conspiracy that the conspirators would and did fraudulently sell over 60 million RINs from the purported production of renewable fuel to the third-party broker for more than $42 million.

25.     It was further a part of the conspiracy that conspirators would and did establish shell companies for the purposes of:

      a.     creating the appearance of false purchases of feedstock by Gen-X and SRC, when in truth and in fact, such purchases never took place;

      b.     creating the appearance of sales of renewable fuel to third parties, when in truth and in fact, such sales never took place; and

      c.     concealing the transfer of the proceeds of the fraudulent scheme between and among the defendants and others.

26.     It was further a part of the conspiracy that the conspirators would and did create fictitious and false records, including:

      a.     fictitious and false invoices from Gen-X or SRC to other entities purporting to show the sale of renewable fuel;

      b.     fictitious and false invoices to Gen-X and SRC purporting to show the purchase of feedstock needed for the production of advanced biofuel; and

    c.     fictitious and false bills of lading purporting to show the

            transportation of renewable fuel and feedstock by tanker truck.

    27.    It was further a part of the conspiracy that the conspirators would and did wire and cause others to wire money generated from the sale of fraudulent RINs to accounts controlled by the defendants.

    28.    It was further a part of the conspiracy that conspirators would and did misrepresent, conceal, and hide, and caused to be misrepresented, concealed and hidden, the purpose of acts committed in furtherance of the conspiracy.

    All in violation of Title 18, United States Code, Section 1349.

### COUNT TWO
### (Money Laundering Conspiracy)

#### Introduction

    1.    The Grand Jury hereby realleges Paragraphs 1 through 15 of Count One of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

#### The Conspiracy

    2.    Beginning on an unknown date, but at least as early as in or about March 2013, and continuing thereafter, through and including at least May 2014, in the Middle District of Florida, and elsewhere,

THOMAS DAVANZO
and
ROBERT FEDYNA,

the defendants herein, did knowingly and willfully combine, conspire, confederate and agree with one another and with others, both known and unknown to the Grand Jury, to

9

commit an offense against the United States, that is, to conduct and attempt to conduct financial transactions, affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud (18 U.S.C. § 1343), knowing that the property involved in such financial transactions represented the proceeds of wire fraud, and further knowing that the transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### Manner and Means of Money Laundering Conspiracy

The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

3. The Grand Jury hereby realleges Paragraphs 17 through 28 of Count One of this indictment and incorporates such paragraphs by this reference as though fully set forth herein.

4. It was further a part of the conspiracy that conspirators would and did use bank accounts in the names of Gen-X and SRC as repositories for proceeds of the perpetrators' wire fraud scheme (hereinafter, the "placement accounts").

5. It was further a part of the conspiracy that one or more conspirators would and did cause bank accounts to be opened in their own names and in the names of various shell entities, including Advanced Energy, CIG, New England Renewable, and Southwestern Renewable (hereinafter, the "layering accounts").

6.    It was further a part of the conspiracy that conspirators would and did transfer and transmit, and caused to be transferred and transmitted, the proceeds of the wire fraud scheme, via different means, including, but not limited to, cash, checks, internal transfers of funds, and wire transfers of funds, from the placement accounts to the layering accounts.

7.    It was further a part of the conspiracy that, after fraud proceeds were deposited into the layering accounts, the conspirators would and did transfer and transmit, and caused to be transferred and transmitted, portions of said proceeds to other layering accounts.

8.    It was further a part of the conspiracy that, after fraud proceeds of the wire fraud scheme were transferred to and through the layering accounts, conspirators would and did transfer and transmit, and caused to be transferred and transmitted, portions of said proceeds back to the placement accounts, to restart the process of cycling the wire fraud proceeds through the layering accounts.

9.    It was further a part of the conspiracy that conspirators would and did withdraw, and caused to be withdrawn, portions of said proceeds from the placement accounts and layering accounts for their personal enrichment and other purposes.

10.    It was further a part of the conspiracy that conspirators would and did misrepresent, conceal, and hide, and caused to be misrepresented, concealed and hidden, the purpose of acts committed in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 1956(h).

11

## FORFEITURE

The allegations contained in Counts One and Two of this Indictment are incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

1.      Upon conviction of conspiracy to violate of Title 18, United States Code, Section 1343, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1956, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense and any property traceable to such property.

3.      The property to be forfeited includes, but is not limited to, a money judgment in an amount to be determined, and the following assets:

    a.     $67,100.00 in U.S. Currency;

    b.     2014 BMW M6, VIN #WBSLZ9C56EDZ78493;

    c.     18 Karat Rolex Oyster Perpetual Day-Date II Everose Watch with Diamond Rose Dial Set;

    d.     Two hundred and ninety nine (299) 1 ounce .9999 Gold Canadian Maple Leaf Coins; and

    e.     Rolex Watch, style number 218239 41 MM WG Presidential Diamond Dial.

4.     If any of the property described above, as a result of any act or omission of the defendants:

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28,

United States Code, Section 2461(c) and Title 18, United States Code, Section

982(b)(1).

A TRUE BILL,

_M. Ethel Wilson_
Foreperson

A. LEE BENTLEY, III
United States Attorney

By: _____
SARA C. SWEENEY
Assistant United States Attorney

By: _____
MEGAN K. KISTLER
Assistant United States Attorney

By: _____
ROBERT A. MOSAKOWSKI
Assistant United States Attorney
Chief, Economic Crimes Section

FILED

2015 OCT -1  PM 4: 19

FORM OBD-34
APR 1991

No.

UNITED STATES DISTRICT COURT
Middle District of Florida
Ft. Myers Division

THE UNITED STATES OF AMERICA

vs.

THOMAS DAVANZO, and
ROBERT FEDYNA

INDICTMENT

Violations:

18 U.S.C. §§ 1349, 1956(h)

A true bill:

_M. Elsie Wilson_
Foreperson

Filed in open court this 1st day

of October, 2015.

_____
Clerk

Bail  $_____

GPO 883 525